UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT SMITH,

                    Plaintiff,                          Case Number 19-12079

v.                                                   Honorable David M. Lawson

                                                     Magistrate Judge David R. Grand

CLARE COUNTY, GENESEE COUNTY,
JOHN WILSON, CHRISTOPHER
SWANSON, DEPUTY WILLIAMS,
DEPUTY MAJOR,

                    Defendants.

_____/

## OPINION AND ORDER ADOPTING IN PART AND REJECTING IN PART MAGISTRATE JUDGE'S REPORT, SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFF'S OBJECTIONS, ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION, GRANTING MOTIONS TO DISMISS, AND DISMISSING AMENDED COMPLAINT WITH PREJUDICE

Plaintiff Robert Smith filed a complaint *pro se* alleging that the defendants violated his First Amendment right of access to the courts when Smith was transferred from one detention facility to another without his personal property, which included certain legal papers that he needed to file an appeal of a state court sentence. The case was referred to Magistrate Judge David R. Grand to conduct all pretrial proceedings. *Pro bono* counsel was appointed for the plaintiff, who filed an amended complaint on his behalf. The Genesee County defendants (the County and Sheriff Christopher Swanson in his official capacity) and the Clare County defendants (the County and Sheriff Christopher John Wilson in his official capacity, and deputies Williams and Major) both filed motions to dismiss. Judge Grand issued a report recommending that the Court grant both motions and dismiss all of the claims against the defendants with prejudice. Smith filed timely objections to the report and recommendation, the defendants responded, and Smith replied.

I.

A.

The facts of the case are summarized adequately by the magistrate judge.  Briefly, Smith alleges in his amended complaint that he was arrested for a probation violation that included possessing a firearm.  He says that he pleaded guilty in state court to a firearm charge with the assurance of his court-appointed attorney that he would be placed in a drug treatment program, but instead he was sentenced to prison.  The firearm possession also led to a federal charge.  Smith was transported from the Genesee County jail to the federal courthouse in Flint (Genesee County's county seat) for his first appearance before a federal magistrate judge.  Smith was not granted bail, and at the conclusion of the proceedings, Clare County deputies Williams and Major did not return Smith to the Genesee County jail and instead drove him to the Clare County jail where he was held in federal custody.  (Clare County has a contract with the United States Marshal Service to house federal detainees).  However, Williams and Major did not transport Smith with his personal property, including his legal papers, and they ignored his requests to stop at the Genesee County jail a few blocks away to retrieve those materials.  Smith alleges that "Williams and Major taunted [him], with one of them stating 'good luck getting that back' and both laughing profusely at his distress."  Am. Compl. ¶ 28, ECF No. 33, PageID.99.

Smith alleges that he sent "kites" (written requests to jail authorities) every two weeks to Clare County officials requesting the return of his property and all went unanswered.  Without his paperwork, he says that he lost his right to appeal the state court conviction because the time for filing his appeal had lapsed.  Smith was transferred back to the Genesee County jail eight months later.  In the meantime, he was told that his belongings were given over to the Bureau of Alcohol, Tobacco, and Firearms (ATF), the federal agency responsible for initiating the federal firearm

charge.  Smith also alleges that while trying to pursue legal remedies in his state court case, he asked for access to legal materials and was told that the Genesee County jail neither has a law library nor provides any form of legal assistance to inmates.

B.

With counsel's assistance, Smith filed a three-count amended complaint.  He alleges that the actions of all the defendants denied him access to the courts because they interfered with his efforts to retrieve his legal paperwork, which prevented him from challenging his guilty plea and sentence in the state trial court and on appeal (Count I).  Count II is directed at Genesee County and Sheriff Swanson for failing to maintain some sort of law library or provide any form of legal assistance to inmates.  Smith also sues both counties and their sheriffs in their official capacities for maintaining policies that condoned the transfer of inmates to other detention facilities without their personal property, including legal paperwork (Count III).

Both sets of defendants filed motions to dismiss alleging that Smith failed to state viable claims.  Defendants Williams and Major also argued that they are protected by qualified immunity because Smith's right of access to the courts was not clearly established in the context of Williams's and Major's conduct.  The Genesee County defendants argue that Smith's claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  And both sets of defendants argue that the official capacity claims against the respective county sheriffs are duplicative of the claims against the counties themselves.

C.

The magistrate judge issued a report on October 29, 2020 recommending that both motions be granted.  He suggested that the amended complaint did not state a viable claim against defendants Williams and Major because they could be held responsible for only a single day's

delay in Smith's legal paperwork since they never possessed the property and they had no obligation to take a detour when their job was to transport a prisoner to a designated facility; Smith's state court appeal of his plea and sentence would have been frivolous and therefore he was not deprived of any meaningful access to the courts; and Smith was represented by counsel in the state court proceedings and in his federal case, which satisfies the First Amendment requirements of ensuring access to the courts.  The magistrate judge also suggested that the claims against the respective county defendants for failure to train and maintaining an unconstitutional policy were conclusory and therefore insufficient; and he determined that there was no constitutional violation against any of their agents or employees and therefore no basis for liability against the counties themselves.  He also noted that the official capacity claims against the county sheriffs were duplicative of the claims against the municipalities.  Finally, he observed that the plaintiff named as defendants the ATF and the Genesee County jail in his original *pro se* complaint, and they were dropped from the amended complaint but never formally dismissed from the case.    He recommended dismissal of those entities.

The plaintiff filed timely objections to the report and recommendation.  The defendants each responded to the objections, and the plaintiff filed a reply.

## II.

The filing of timely objections to a report and recommendation requires the court to "make a *de novo* determination of those portions of the report or specified findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  This fresh review requires the court to re-examine all of the relevant evidence previously reviewed by the magistrate judge in

order to determine whether the recommendation should be accepted, rejected, or modified in whole or in part.  28 U.S.C. § 636(b)(1).

This review is not plenary, however.  "The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately," *Walters*, 638 F.2d at 950, enabling the court "to focus attention on those issues — factual and legal — that are at the heart of the parties' dispute," *Thomas v. Arn*, 474 U.S. 140, 147 (1985).  As a result, "'[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.'"  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

A.

Smith does not object to the recommendation to dismiss the claims against Sheriff Wilson and Sheriff Swanson in their official capacities because they are duplicative of his claims against the counties.  The magistrate judge's conclusion is correct, *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("There is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, local government units can be sued directly for damages and injunctive or declaratory relief."), and the motion will be granted as to those defendants because the claims against them are "redundant,"  *see Foster v. Michigan,* 573 F. App'x  377, 390 (6th Cir. 2014).

Smith does not object to the recommendation to dismiss the Genesee County jail and the ATF from the case.  Smith dropped them from the case in his amended complaint, which contains no allegations against them.  The amended pleading supersedes the original pleading and displaces

it.  *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 617 (6th Cir. 2014).  Those defendants

will be dismissed from the case.

B.

Smith states four objections to the report and recommendation to grant the motion to

dismiss by defendants Williams and Major.  He first disputes the conclusion that their conduct

only caused one day's delay in Smith being without his legal paperwork.  The significance of that

fact is its support for the magistrate judge's conclusion that minor delays and inconveniences will

not constitute denial of access to the courts.  *See Chandler v. Baird*, 926 F.2d 1057, 1063 (11th

Cir. 1991) (holding that deprivations of legal materials that are of "a minor and short-lived nature"

do not amount to constitutional access to the courts violation); *Taylor v. Widup*, No. 07-301,  2007

WL 3256598, at *4  (N.D. Ind. Nov. 2, 2007) ("Standing alone, delay and inconvenience do not

rise to the level of constitutional deficiency.").

The magistrate judge's observation is perhaps a fair inference that can be drawn from the

amended complaint.  But it is not the only inference.  When ruling on a motion to dismiss for

failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must "'construe

the complaint in the light most favorable to the plaintiff and accept all [factual] allegations as

true.'"  *Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 252 (6th Cir. 2020) (quoting *Keys v. Humana,

Inc*., 684 F.3d 605, 608 (6th Cir. 2012)).  The plaintiff here had to allege plausibly that these

defendants deprived him of access to paperwork that he needed to pursue remedies in state court.

A "claim is facially plausible when a plaintiff 'pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Matthew N.

Fulton, DDS, P.C. v. Enclarity, Inc.*, 907 F.3d 948, 951-52 (6th Cir. 2018) (quoting *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009)).  Smith alleged that when he asked the deputies to drive to the

- 6 -

Genesee County jail so he could get his legal papers, they taunted him, saying "'good luck getting that back' and both laugh[ed] profusely at his distress." Am. Compl. ¶ 28, ECF No. 33, PageID.99. The plaintiff also alleged that he "specifically told [Williams and Major] that his property at Genesee County Jail included legal paperwork he needed to challenge his state sentence." *Id.* ¶ 25, PageID.98.  It is fair to infer from these allegations that these defendants knew that their conduct was separating Smith from legal paperwork for much more than a day — perhaps forever — and that Smith needed the papers to pursue court remedies.  The plaintiff's objection to that conclusion by the magistrate judge will be sustained.

For the same reason, Smith's second objection — that the magistrate judge erroneously concluded that a minor delay in ensuring access to the courts cannot give rise to a viable access to the courts claim — will be sustained.  As noted, the delay cannot unequivocally be characterized as "minor."  Smith lost papers, according to him, that were necessary to challenge his state court sentence.  Under Michigan law, a criminal defendant may file a request for appellate counsel with the sentencing court within 42 days of sentencing. Mich. Ct. R. 6.425(G)(3). It is common practice in the Genesee County courts to furnish at sentencing court-approved form for defendants to make such a request.  It is fair to infer that such a form was among the papers Smith wanted the deputies to retrieve from the jail before he was taken to another detention facility.  Perhaps Smith believed that he needed the form to make such a request, but there is nothing in the Michigan procedural rules that would have prevented him from merely sending a letter to the sentencing judge asking to appeal and for appointment of appellate counsel.  He was sentenced by the state court on March 4, 2019 and transported to the Clare County jail on March 12, 2019, so he had time to meet the deadline.

Nonetheless, it is well established that prisoners have a fundamental right of access to the courts. *Bounds v. Smith,* 430 U.S. 817, 821 (1977).  The right is derived from the Due Process Clause of the Fourteenth Amendment and the First Amendment right to petition for redress of grievances. *Knop v. Johnson,* 977 F.2d 996, 1002 (6th Cir. 1992).  The deprivation of an inmate's legal papers could conceivably violate this right because prison officials are prohibited from "actively interfering with inmates' attempts to prepare legal documents." *Lewis v. Casey,* 518 U.S. 343, 350 (1996).  Smith explained in his amended complaint that his papers were necessary for him to pursue state appellate remedies.  In the context of the known and established state procedures for indigent criminal defendants, that allegation plausibly states a claim for denial of access to the courts.

Smith's third objection is that the magistrate judge improperly suggested that the loss of the ability to directly appeal Smith's criminal sentence as a result of the defendants' actions did not constitute an "actual injury" sufficient to state a claim for deprivation of access to the courts. That objection refers to the magistrate judge's determination that Smith's state court appeal would have been frivolous and therefore he failed to state a viable access-to-the-courts claim.

It is true that for such a claim, the plaintiff must plead facts that support the inference that he suffered an "actual injury," *Lewis,* 518 U.S. at 351, by showing that his underlying claim was non-frivolous, *id.* at 353 (reasoning that the "actual injury" requirement means that inmates must "demonstrate that a nonfrivolous legal claim ha[s] been frustrated or was being impeded."). Examples of actual prejudice include having a non-frivolous case dismissed; being unable to file a non-frivolous complaint; and missing a court-imposed deadline. *Id.* at 353; *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005).  "[T]he underlying cause of action, whether anticipated or lost,

is an element that must be described in the complaint[.]" *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

The magistrate judge suggested that the plaintiff's appeal of his criminal case would have been frivolous, after he examined the available state court record and concluded that there was no plea agreement or statements indicating that Smith was entitled to drug treatment rather than a prison sentence.  However, at the pleading stage of the case, courts need not, and should not, dig that deeply into the underlying lost claim.  "A plaintiff need not demonstrate that the underlying claim would have been successful; instead, deprivation of an 'arguable (though not yet established) claim' is sufficient."  *Brown v. Matauszak*, 415 F. App'x 608, 612 (6th Cir. 2011) (quoting *Lewis,* 518 U.S. at 353 n.3).  In his amended complaint, Smith explained that he pleaded guilty because he was misled by his lawyer about the sentencing consequences of his conviction.  That is sufficient to state an "arguable" basis for an appeal, which might have been fortified by further developments in the state court, such as an evidentiary hearing where Smith's state court lawyer could have testified.  *See People v. Ginther*, 390 Mich. 436, 441-42; 212 N.W.2d 922, 924 (1973). Because the amended complaint adequately pleads prejudice, the third objection will be sustained.

Smith's fourth objection is that the magistrate judge erroneously determined that he was not denied access to the courts because "he had legal counsel with regard to his proceedings in the Genesee County Circuit Court."  R&R at 10, ECF No. 56, PageID.431.  It is true that an inmate's right of access to the courts is fully protected if he is represented by counsel.  *Holt v. Pitts*, 702 F.2d 639, 640 (6th Cir. 1983) ("[A] prisoner's constitutionally-guaranteed right of access to the courts [is] protected when a state provides that prisoner with . . . the assistance of legally trained personnel.").  But the amended complaint plainly states that Smith was *not* represented by his state

court-appointed attorney at the time he was deprived of his legal papers.  In fact, the point of his complaint is that he was deprived of the opportunity to request an attorney to file an appeal.

It is fair to infer from the amended complaint that Smith was represented by a lawyer in the federal prosecution.  If that lawyer was appointed under the Criminal Justice Act, his duties would not have extended to giving advice about a state criminal case.  The Sixth Circuit has held that such crossover representation opportunities may be enough to defeat an access-to-the-courts claim.  *Martucci v. Johnson*, 944 F.2d 291, 295 (6th Cir. 1991).  In granting summary judgment against the plaintiff in that case who complained about the lack of legal resources that he needed to pursue a conditions-of-confinement claim, the court of appeals stated:

> [The plaintiff] argues that although he was represented by appointed counsel during his criminal murder trial, he was nevertheless denied access to the courts insofar as the instant section 1983 cause of action was concerned, reasoning that his counsel was appointed to defend him in the criminal case and not to represent him as a plaintiff in a civil rights action. There is, however, nothing in the record to lend support to the presumption that [the plaintiff] was barred from discussing his [impeded access to the courts] — and the legal implications thereof — with his appointed attorney.

*Ibid.*  However, that decision was at the summary judgment stage.  It may be true that the proofs in this case would sustain a similar finding.  But the amended complaint pleads sufficient facts to avoid that bar at this stage of the case.  The fourth objection will be sustained.

Defendants Williams and Major, however, raise the defense of qualified immunity, which the magistrate judge did not discuss, but which requires that their motion to dismiss be granted. The doctrine of qualified immunity insulates state actors from liability as long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Once the qualified immunity defense is raised, "the plaintiff must show that (1) the defendant violated a constitutional

right and (2) that right was clearly established." *McDonald v. Flake*, 814 F.3d 804, 812 (6th Cir. 2016) (citing *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 680 (6th Cir. 2013)).

It is conceivable under the pleaded facts that one could conclude that Williams's and Major's refusal to indulge a handful of left and right turns upon departing the federal courthouse in Flint and to retrieve the plaintiff's legal papers from the Genesee County jail could be considered "actively interfering" with Smith's attempts to pursue a criminal appeal.   *Lewis,* 518 U.S. at 350. Smith made a request for his legal papers, he explained the reason for his need, these defendants mocked him, and their taunts suggested that Smith's pursuit of his property likely would be doomed to failure.   Those facts allow an inference of intentionality that transcends mere negligence. *See Sims v. Landrum*, 170 F. App'x 954, 957 (6th Cir. 2006); *see also Collins v. City of Harker Heights*, 503 U.S. 115, 127-30 (1992) (holding that an allegation of negligence is insufficient to state an access to the courts claim under § 1983).

However, as the magistrate judge observed, neither Williams nor Major ever actually had Smith's papers in their possession.  Did Smith have a clear constitutional right to require them to act on his request to retrieve them?   "To determine whether a constitutional right is clearly established, [courts] must look first to decisions of the Supreme Court, then to decisions of [the Sixth Circuit] and other courts within [the] circuit, and finally to decisions of other circuits." *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 887 (6th Cir. 2019) (quoting *Crawford v. Geiger*, 656 F. App'x 190, 198 (6th Cir. 2016), and *Brown v. Lewis*, 779 F.3d 401, 418-19 (6th Cir. 2015)). Smith has cited no case, and the Court has not found any, that fit this fact pattern or that imply such a clearly established right.

Of course, "'an official can be on notice that his conduct violates established law even in novel factual situations.'" *Cahoo*, 912 F.3d at 898 (quoting *Littlejohn v. Myers*, 684 F. App'x 563,

569 (6th Cir. 2017) (quoting *Hope v. Pelzer*, 536 U.S. 730, 731 (2002))).  The touchstone of the "clearly established" inquiry is "fair warning." *Baynes*, 799 F.3d at 612-13 (quoting *Hope*, 536 U.S. at 741).  Accordingly, there need not "be 'a case directly on point, but existing precedent must have placed the constitutional question beyond debate.'" *Morgan v. Fairfield Cnty.*, 903 F.3d 553, 564 (6th Cir. 2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).  In other words, Smith must show that "'[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Baynes v. Cleland*, 799 F.3d 600, 610 (6th Cir. 2015) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  But Smith has not made that showing, suggesting only in a general way that the defendants' conduct amounted to intentional interference with his possession of his legal papers.  And "because 'immunity protects all but the plainly incompetent or those who knowingly violate the law,' this court must not 'define clearly established law at a high level of generality.'" *Tlapanco v. Elges*, 969 F.3d 638, 649 (6th Cir. 2020) (quoting *Kisela v. Hughes*, --- U.S. ---, 138 S. Ct. 1148, 1152 (2018)).

Smith's theory of liability against defendants Williams and Major is plausible, but it is novel and the right in this context is not clearly established.  The claim against them, therefore, is barred by qualified immunity.

C.

Smith also states three objections to the recommendation to grant the motions to dismiss by municipal defendants Clare County and Genesee County.  The plaintiff acknowledges that local governmental entities cannot be held liable under 42 U.S.C. § 1983 solely for the acts of their agents; they are accountable under that statute only for their own conduct.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (holding that "a municipality cannot be held liable [under section

1983] solely because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory").  The plaintiff, therefore, must point to an official policy, custom, or practice of that local government as the source of the constitutional violation.  *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005).  And he must allege facts that show a causal connection between the policy and the injury.  *Board of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997); *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012).

Pleading and proof of a *Monell*-qualifying "policy" can be accomplished by stating facts that establish "(1) the . . . [county's] official policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal violations.'"  *Winkler v. Madison Cnty.,* 893 F.3d 877, 901 (6th Cir. 2018) (quoting *Baynes*, 799 F.3d at 621).  For Clare County, Smith focuses on a failure-to-train theory.  He objects to the magistrate judge's suggestion that he failed to plead adequate facts to permit the inference that the County failed to train its officers (such as Williams and Major) to transport inmates' property when they transported the inmates to the jail, and failed to train other personnel to respond to inmate requests for their property after they were transferred to the jail.

A plaintiff can establish *Monell* liability against a municipality by showing that "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).  To plead such a claim, the plaintiff must allege facts that demonstrate either (1) "a pattern of similar constitutional violations by untrained employees and [the defendant counties'] continued adherence to an approach that it knows or should know has failed to prevent tortious conduct by employees, thus establishing the conscious disregard for the consequences of its action . . . necessary to trigger municipal liability," or (2) "a single violation of federal rights, accompanied by a showing that [the defendant] has

failed to train its employees to handle recurring situations presenting an obvious potential for a constitutional violation." *Shadrick v. Hopkins Cnty., Kentucky*, 805 F.3d 724, 738-39 (6th Cir. 2015) (citations, quotations, and alterations omitted).

The amended complaint contains no facts that support the inference of a pattern of conduct pertaining to the transport of inmates and their property. The allegations as to defendants Williams and Major are confined to the particular incident on March 12, 2019. There are no other instances alleged where an inmate was separated from his property.

However, the plaintiff also alleges in his amended complaint that he sent kites asking for his legal papers every two weeks over the eight months that he was lodged in the Clare County jail and that he did not receive a response to a single one of them. He also alleged that it took a lawsuit — filed by him *pro se* — to attract the Clare County authorities' attention, and only then did someone look into the recovery of his personal property, and then only to find that Genesee County personnel gave it (or at least some of it) to the ATF. Those allegations support the inference that Clare County failed to train its jail personnel to respond to inmate requests for legal materials that were necessary to pursue appellate remedies. That conduct is attributable to the County itself. *See D'Ambrosio v. Marino*, 747 F.3d 378, 387-88 (6th Cir. 2014). The amended complaint, therefore, adequately pleads that Clare County was deliberately indifferent to Smith's First Amendment rights, and its policy of inadequate training led to that violation. *See Lewis*, 518 U.S. at 355 (holding that inmates must be provided with the ability to "attack their sentences, directly or collaterally").

Smith also argues that the magistrate judge did not address Smith's allegation that the Genesee County jail failed to provide a law library or legal assistance for inmates. That is inaccurate; the magistrate judge dropped a footnote rejecting the law library claim, reasoning that

- 14 -

Smith was represented by counsel when he returned to the Genesee County jail and his appeal of the state court conviction and sentence would have been frivolous.  R&R at 10 n.8, ECF No. 56, PageID.431.  For the reasons discussed above, however, that reasoning does not support the dismissal of that count of the amended complaint.

The amended complaint adequately states an access-to-the-courts claim based on Genesee County's failure to provide a law library or legal assistance to inmates.  Smith alleged that since November 2019 when he was returned to that facility, he was informed in response to several kites that "Genesee County Jail neither has a law library nor provides any form of legal assistance to inmates"; and as a result, he was unable to challenge his state court conviction and sentence directly or collaterally.  Am. Compl. ¶¶ 34-36, ECF No. 33, PageID.100-101.  These allegations state more than a mere "freestanding right to a law library or legal assistance" or that "his prison's law library or legal assistance program is subpar in some theoretical sense."  *Lewis*, 518 U.S. at 351.  Rather, the allegations "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim."  *Ibid.*

Because Smith adequately pleaded *Monell* claims against Clare and Genesee Counties, his objections to the magistrate judge's analyses of those counts of the complaint will be sustained.

However, that does not end the analysis.  The Genesee County defendants contended in their motion that Smith's access-to-the-courts claims are barred by the rule in *Heck v. Humphrey*, 512 U.S. 477 (1994).  In that case, the Supreme Court held that when a plaintiff brings a civil rights action under section 1983 that "challenges the fact or duration of his confinement and seeks immediate or speedier release," the case must be viewed as a habeas corpus action and state remedies must be exhausted.  *Id.* at 481 (citing *Preiser v. Rodriguez,* 411 U.S. 475 (1973)).  Therefore, the Court held, if a plaintiff's section 1983 action "would necessarily imply the

invalidity of his conviction or sentence . . . the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated" by executive order, reversal on direct appeal, or writ of habeas corpus. *Id.* at 487.

It is plain here that Smith is not challenging "the fact or duration of his confinement" from his state firearm offense, and he is not "seek[ing] immediate or speedier release."  And although for his access claim he must allege that his erstwhile appeal had arguable merit, he does not have to plead or prove that it is a dead bang winner, thereby implying the invalidity of his state conviction. *Brown*, 415 F. App'x at 612 (holding that an allegation of "an 'arguable (though not yet established) claim' is sufficient").  Otherwise, Smith and similarly situated plaintiffs would be caught in a dilemma.  To satisfy *Heck*, he would have to show that his state conviction was invalidated on direct appeal or otherwise, which he cannot show because the defendants' interference with his legal papers prevented him from access to the appellate remedies necessary to obtain a reversal.  And if the appeal would not lead to a reversal of the conviction because it lacked merit, he could not satisfy *Lewis*'s "actual injury" requirement.  *See Lewis,* 518 U.S. at 351.  That Catch-22 relegates such plaintiffs to pleading a lost claim that has the characteristics of Schrödinger's cat.  *See* https://en.wikipedia.org/wiki/Schr%C3%B6dinger%27s_cat.  Surely the law would not mandate such an absurd result.

(A further absurdity results from the confluence of *Heck*'s rule that a plaintiff asserting an access claim for a derailed appeal must show that the conviction was nullified by a writ of habeas corpus, among other procedures; and the federal requirement that a prisoner applying for habeas corpus must exhaust his state remedies by taking a direct appeal.  *See* 28 U.S.C. § 2254(b)(1)).

Enter *Sampson v. Garrett*, 917 F.3d 880 (6th Cir. 2019).  There, the court of appeals held that "*Heck* applies to an access-to-the-court claim alleging state interference with a direct criminal

- 16 -

appeal." *Id.* at 881.  The court reasoned that because "a successful access claim requires a prisoner to show that the defendants have scuttled his pursuit of a 'nonfrivolous, arguable' claim," *ibid.* (quoting *Christopher*, 536 U.S. at 415), a plaintiff alleging that state actors prevented him from accessing the court to appeal a criminal conviction "could win . . . *only* if he implied the invalidity of his underlying judgment," *id*. at 882.  The court held, therefore, that "*Heck* bars this kind of claim." *Ibid.*

For this reason, the Court is constrained to grant the motions to dismiss the remaining counts of the amended complaint.

III.

The plaintiff's claims against the individual county sheriffs in their official capacities will be dismissed because they are duplicative of the claims against the respective counties.  The claims against the ATF and the Genesee County jail also will be dismissed formally for the reasons stated above.  Defendants Williams and Major are entitled to qualified immunity and their motion to dismiss will be granted on that basis.  Although the plaintiff has stated meritorious objections to the dismissal of the claims against Clare County and Genesee County, the remaining counts of the complaint nonetheless must be dismissed under the rule in *Heck v Humphrey*.

Accordingly, it is **ORDERED** that the plaintiff's objections to the report and recommendation (ECF No. 57) are **SUSTAINED IN PART AND OVERRULED IN PART**, the report (ECF No. 56) is **ADOPTED IN PART AND REJECTED IN PART** and the recommendation is **ADOPTED**.

It is further **ORDERED** that the Clare County defendants' motion to dismiss (ECF No. 38) is **GRANTED**.

It is further **ORDERED** that the Genesee County defendants' motion to dismiss (ECF No. 41) is **GRANTED**.

It is further **ORDERED** that the amended complaint is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date:   July 29, 2021